[Civ. No. 7152. Third Dist. Apr. 26, 1946.]

EVANGELINA AMARAL, Respondent, v. UNITED BENEFIT LIFE INSURANCE COMPANY, Appellant.

Horace T. Beverly and Wm. R. Ouderkirk for Appellant.

Libby & Finn and A. Dal Thomson for Respondent.

ADAMS, P. J.—This is an appeal from a judgment in favor of plaintiff in an action brought by her to recover the value of a life insurance policy issued by appellant upon the life of plaintiff's deceased husband, August P. Amaral. The policy was issued in May, 1942, without medical examination, upon the solicitation of a salesman employed by an agency. It is conceded that all premiums due thereon were paid up to the time of the death of Amaral in October, 1942. Defendant refused payment to plaintiff, the beneficiary, alleging in its answer to plaintiff's complaint that the policy had been issued in reliance upon answers to questions set forth in the written application which Amaral made, and that in said application Amaral concealed from defendant and misrepresented material facts, particularly in that he represented that he was sound mentally and physically; that he had never had "Kidney Disease"; that he had not had any local or constitutional disease within five years, and that he was then in good health. It was further alleged on information and belief that Amaral's answers were false, fraudulent and un-

true in that at the time the application was made Amaral was not physically or mentally sound, but, on the contrary, was in poor health and was suffering from chronic nephritis, which fact was known to him.

The cause was tried by the court sitting without a jury, and at the conclusion of the hearing findings of fact were filed in which the allegations of plaintiff's complaint were found to be true and it was specifically found that the foregoing allegations of the answer were untrue.

Appellant here contends that the findings are without support in the evidence, particularly the finding that it was not true that at the time of the making of the application Amaral was in poor health and suffering from disease, or that such fact was known to Amaral, and the finding that it was not true that at said time he had suffered from chronic nephritis or that said fact was known to him. Appellant asserts that proof offered by it of the existence of kidney disease in Amaral "was clear and uncontradicted and that there was no evidence adduced from which the trial court was justified in finding to the contrary."

██ ██ This contention calls for a reiteration of the well established rule that where, on appeal, it is contended that findings of a trial court are not sustained by the evidence, the duty of an appellate court begins and ends with a determination as to whether there is in the record any substantial evidence—whether contradicted or uncontradicted—which, taken in its most favorable aspect together with reasonable inferences therefrom, is sufficient to support the judgment; and that when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]; *Estate of Bristol,* 23 Cal.2d 221, 223-224 [143 P.2d 689].)

██ Appellant relies upon the testimony of one Dr. Bulman, whose testimony, briefly stated, was that Amaral had consulted him in August, 1935, for "nerves"; that the patient was then about 25 years of age; that he examined him and concluded that he had "a grade two albumin area, he was a medio type of hypertension," and that his blood pressure was "one hundred fifty systolic and ninety diastolic"; that from his past history he made a diagnosis of "chronic nephritis with parenchymatous." That the substance of the history given him by Amaral was that as a boy of eight years "he was

very swollen'' for some time; that therefrom he ''presumed'' that at that time the boy had had an *acute* attack of nephritis. He first said that he did not run a kidney test in August, 1935, and only saw the patient once. Later in his testimony he said that he did make an urinalysis in August, 1935, but made no microscopic test; that the patient was supposed to come back but did not do so; that he did not see Amaral again until October, 1942, at which time the patient complained of a choking attack; that he gave him a little sedative, calcium, but did not prescribe for chronic nephritis or put him on a diet; that he then ''realized he [Amaral] was approaching terminal phase,'' and that his condition was simply a continuation of the condition which he found in 1935, only more severe; that he attended Amaral until his death and signed the death certificate; that in said certificate he set forth that the immediate cause of death was ''Uraemia Duration 4 days Due to Chr. nephritis parenchymatous 24 yrs.'' This witness was asked: ''Doctor, in 1935 when you examined Mr. Amaral and found the condition which you testified to, did you tell him your conclusions?'' The answer was, ''Yes, they invariably ask how the kidneys are and we tell them exactly what the findings are right at that time''; that he told Amaral that he had ''this marked edema albuminuria.'' In view of the fact that Dr. Bulman's testimony regarding a kidney test in 1935 was contradictory, and that he then saw the patient but once, it appears improbable that he then told Amaral that he had kidney trouble. This witness also testified that he had treated Amaral in 1928 for sore throat and had then performed a tonsillectomy, and that he then found albumin in the urine. But he gave no testimony that he treated him then or at any other time for nephritis or any other form of kidney disease. When asked by the court if he had told Amaral what albumin in the urine meant, he said: ''We usually express it, it is Bright's disease. I don't remember what I told him at that time'', (1928).

In his final report made after the patient's death this doctor stated that he had treated the patient for ''Uraemia and chronic interstitial nephritis.'' Another time he said that Amaral had ''glomerulitis nephritis.''

As opposed to the testimony of Dr. Bulman, plaintiff called Dr. Makaroff who testified that about 5 per cent of healthy young people show the presence of albumin in the urine, without having any disease of the kidneys. Regarding

the conclusions of Dr. Bulman as stated variously in his testimony, in the death certificate, and in his final report of illness—that Amaral as a boy had "acute nephritis," and later had "chronic interstitial nephritis," "chronic nephritis with parenchymatous," "nephritis parenchymatous 24 yrs.," "glomerulonephritis" and "glomerulitis nephritis," Dr. Makaroff testified that there are differences between glomerulonephritis" and parenchymatous and chronic nephritis; that there is no such thing as chronic interstitial nephritis, as interstitial nephritis is an acute inflammatory condition that does not become chronic and from which the patient dies or recovers; that chronic nephritis is a condition causing the kidney cells to die and is not an inflammatory condition; that there is no way of determining the type of nephritis from which a patient may be suffering without a complete microscopic examination and further tests to determine whether the injury is here or there, or whether it is nephritis at all; that the presence of albumin without evidence showing loss of kidney function or cellular elements in the urine cannot be construed as nephritis. Also that it was quite possible for Amaral to have been free of nephritis in May and to have died of it in October—that one may die of it in a period of a few days; that in the majority of cases of even chronic nephritis the condition is not reflected in the physical appearance of the patient, who might appear to be in a normal health condition, and be unaware of his true condition; and that the tests given Amaral by Dr. Bulman would not disclose the presence of chronic nephritis. Regarding Amaral's blood pressure Dr. Makaroff testified that nervousness might cause the blood pressure Dr. Bulman found in Amaral; that he considered Dr. Bulman's diagnosis was too haphazard and not sufficiently confirmed.

Plaintiff, in addition to the testimony of Dr. Makaroff, called two witnesses who testified that they had known Amaral for twenty years or more, and had worked with him; that Amaral worked at hard manual labor, never missed work on account of his health, never complained, and was "the picture of health."

Mrs. Amaral testified that she married Amaral in April, 1935, and had known him then for two years; that during her marriage Amaral never stayed at home from work because of illness, never complained and never mentioned that he had kidney trouble; that he looked "nice and strong";

that she went with him to see Dr. Bulman in October, 1942, but Dr. Maximov then examined him as Dr. Bulman was out of town; that Dr. Maximov took his blood pressure, but did not take a urine specimen; that on a second visit they saw Dr. Bulman; that she asked both doctors what was the matter with her husband but neither answered her question.

From the foregoing we are satisfied that the trial court's findings, of which appellant complains, cannot be said to be without substantial support in the evidence. The credibility of Dr. Bulman, and the reliability of his various diagnoses were matters for the determination of the trial court, as was the question whether Amaral, even if he had kidney disease, knew of the fact.

In the recent case of *Lavender* v. *Kurn,* —— U.S. —— [—— S.Ct. ——, 90 L.Ed. ——, ——, ——], the court said: "Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

The functions of the trial court in the case before us were the same as those of the jury in the case last cited. That court was not compelled to accept the testimony of Dr. Bulman *in toto,* but may well have concluded that his prescience regarding Amaral's earlier condition was due to a large extent to subsequent events. And the testimony of the other witnesses was ample to support the conclusions set forth in the findings which appellant contends do not find support in the evidence.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.